UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kimberly S.,                                                            Case No. 17-cv-5219-KMM

          Plaintiff,

v.                                                                    **ORDER**

Nancy A. Berryhill,

          Defendant.

This matter is before the Court on the parties' cross-motions for summary judgment. (Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 13; Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 16.) For the reasons set forth below, the Court finds that Kimberly S.'s (hereafter "Ms. S.") motion for summary judgment be DENIED and the Commissioner's motion for summary judgment be GRANTED.

## I.    Factual Background and ALJ Decision

Ms. S. first filed for supplemental security income on December 2, 2014, alleging disability beginning on June 1, 2011. (R. 65.) Her claim was denied initially and upon reconsideration. (R. 89, 97.) She timely requested a hearing before Administrative Law Judge Roger Thomas, which was held on November 29, 2016. (R. 31.) On December 16, 2016, ALJ Thomas issued an unfavorable decision.

### A.    ALJ Thomas's Decision

ALJ Thomas followed the five-step sequential evaluation process for determining whether Ms. S. is disabled. At Step One, ALJ Thomas determined that Ms. S. had not engaged in substantial gainful activity since her claimed date of disability. (R. 17.) He noted that while she had worked since her alleged onset date, it did not rise to the level of substantial gainful activity. (*Id.*)

At Step Two, ALJ Thomas determined that Ms. S. had two severe impairments: asthma and systemic lupus erythematosus ("SLE"). (R. 17.) He also evaluated Ms. S.'s other medically determinable mental impairments, major depression and ADHD, but found that they were both nonsevere. (R. 18.) In making this determination, he considered the four functional areas set out in 20 C.F.R. Part 404, Subpart P, Appendix 1, often referred to as the "paragraph B" criteria. These four areas are activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.

ALJ Thomas determined that Ms. S. has only mild limitations in activities of daily living in light of her capacity for taking care of herself and a household, despite reporting a lack of energy for doing so. (R. 19.) Ms. S. reported being able to cook and clean, dividing household chores with her boyfriend. (R. 210–211, 229–230.) She cares for two cats, including feeding, bathing, trimming claws, and cleaning their litter box. (R. 210, 229.) She also shops in stores one or two times a week. (R. 212.) ALJ Thomas also found that Ms. S. has only mild limitations in the area of social functioning. (R. 19.) She lives with her boyfriend, and regularly chats online with and visits her best friend. (R. 213.) Similarly, ALJ Thomas found that Ms. S. has mild limitations in the area of concentration, persistence, or pace. (R. 19.) He found that although she needs reminders for appointments and medication and has a somewhat limited attention span, she is capable of working as a freelancer, as well as using a computer and cell phone to help her organize. (R. 19.) In the fourth area, the ALJ noted that Ms. S. has not experienced any episodes of decompensation of an extended duration. (R. 19.) Because she did not have two or more marked limitations, or one marked limitation and an episode of decompensation of an extended duration, ALJ Thomas concluded that Ms. S.'s mental impairments were non-severe. (R. 19–20; *see also* 20 C.F.R. § 416.920(a)(d)(1).)

At Step Three, ALJ Thomas found that none of Ms. S.'s impairments, separately or in combination, met or equaled the severity of any listed impairments. He considered Listing 3.03, asthma, but found that Ms. S.'s symptoms did not meet the criteria. (R. 20.) Similarly, he considered listing 14.02 for SLE, but again found that the criteria for the listing was not met by Ms. S.'s symptoms. (*Id.*)

At Step Four, ALJ Thomas determined that Ms. S. has the residual functional capacity ("RFC") to perform light work with additional restrictions. Specifically, he limited Ms. S. to standing or walking for only two hours per eight-hour work day; a sit/stand option after 20 minutes of weight bearing; no exposure to temperatures above 90 degrees or below 32 degrees Fahrenheit; and no exposure to wetness, humidity, dusts, fumes, gases, and hazards such as unprotected heights and dangerous machinery. (R. 20.) He then determined that Ms. S. could perform her past relevant work as a sales clerk or office clerk. (R. 23.) Instead of halting his inquiry there, ALJ Thomas proceeded to Step Five in order to make an alternative finding.

At Step Five, ALJ Thomas found in the alternative that there were sufficient jobs in the national economy that she is able to perform. In making this determination, he found that transferability of job skills was not material to the disability determination, and therefore did not engage in a transferability analysis. (R. 23–24.) Having determined that Ms. S. was capable of working, ALJ Thomas found that she was not disabled.

After this unfavorable determination, Ms. S. sought review by the Appeals council, which denied her request. (R. 1–6.) Thus, the ALJ's decision became the final determination of the Commissioner, making Ms. S.'s case ripe review by this Court.

### B. Ms. S.'s Employment History

Of particular relevance in this case is Ms. S.'s employment history. During college, she worked at her university as a student worker. (R. 193.) This job entailed a variety of office tasks, such as making deliveries, filing, transcription, making copies, and answering phones. (R. 202, 204.) She was also permitted to study during her work hours. (R. 202, 204.) As a student worker, Ms. S. only worked 3–4 hours per day, 3 days a week. (R. 202, 204.)

After leaving school, Ms. S. began work as a part-time manager at a comic book store. She performed a variety of tasks in this role, including cashiering, restocking, cleaning, organizing comics, assisting customers, taking calls, and supervising two other employees. (R. 203.) Though her supervisor made accommodations for her physical limitations, Ms. S. eventually quit the job because it

3

was too physically and mentally demanding. (R. 44–45.) Ms. S. is not currently employed, but earns a small income ($60–$80 per month) as a freelance artist. (R. 36–37.)

## II. Analysis

Ms. S. challenges the ALJ's determination on three separate grounds. First, she argues that ALJ Thomas's past relevant work ("PRW") finding was improper for several reasons: (1) the sales clerk job cannot be performed under the physical limitations of the RFC; (2) the RFC also prevents the sales clerk job from being performed as it actually was performed in the past; (3) the sales clerk job that Ms. S. previous performed was actually a "composite job" and therefore it was improper to find that she could perform it as generally performed; and (4) neither of Ms. S.'s previous jobs rose to the level of significant gainful activity, therefore disqualifying either one from consideration as PRW. Second, Ms. S. argues that ALJ Thomas's alternative finding at Step Five was improper because in concluding that she was not disabled, he erroneously found that the question of transferability of skills was irrelevant. Third, Ms. S. asserts that ALJ Thomas's finding of her mental impairments as non-severe is not supported by substantial evidence in the record and further argues that he erred by not considering the mental impairments in his RFC determination.

After careful review, the Court concludes that ALJ Thomas did not commit reversible error and denies Ms. S.'s motion for summary judgment. First, the Court determines that Ms. S.'s previous work as an office clerk is properly considered PRW. Although Ms. S.'s arguments regarding whether she is capable of performing her PRW as a sales clerk may have merit, the Court need not address them in light of the ALJ's other conclusions. Further, the Court finds that ALJ Thomas's alternate finding, that Ms. S. is capable of other work as described in Step Five, is properly decided and provides an independent basis for his conclusion that Ms. S. is capable of work. The Court also determines that ALJ Thomas's consideration of Ms. S.'s mental impairments was sufficient, and his conclusions supported by substantial evidence in the record as a whole. Therefore, the Court affirms the Commissioner's determination.

## A. Standard

In reviewing the Commissioner's denial of Ms. S.'s application for benefits the Court determines whether the decision is supported by "substantial evidence on the record as a whole" and whether it results from an error of law. *Gann v. Berryhill*, 864 F.3d 947, 950 (8th Cir. 2017); *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance of the evidence, but is such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014) (internal citations and quotation marks omitted). The Court considers not only the evidence supporting the Commissioner's decision, but also the evidence in the record that "fairly detracts from that decision." *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). However, the Court does not reverse the Commissioner's decision merely because substantial evidence also supports a contrary outcome or because the record might support a different conclusion. *Gann*, 864 F.3d at 950; *Reed*, 399 F.3d at 920. The Court should reverse the Commissioner's decision only where it falls outside "the available zone of choice," meaning that the Commissioner's conclusion is not among the reasonable positions that can be drawn from the evidence in the record. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008).

## B. Past Relevant Work

The Court finds that Ms. S.'s previous work as a student worker qualifies as PRW. In order to serve as PRW, that work must have been "done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and [have been] substantial gainful activity." 20 C.F.R. §§ 404.1565, 416.965(a). Ms. S.'s only challenge to the student worker position as PRW is the substantial gainful activity requirement. In order to qualify as substantial gainful activity, that work must be:

> (a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

5

> (b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

20 C.F.R. § 404.1572; *see also id.* § 416.972 (same). Though earnings derived from work activities are a primary consideration of whether a job was substantial and gainful, reduced earnings "will not necessarily show that [the claimant] is not able to do substantial gainful activity." 20 C.F.R. § 416.974(a)(1). "Work activity may be considered gainful whether or not a profit is realized." *Pickner v. Sullivan*, 985 F.2d 401, 403 (8th Cir. 1993).

Ms. S.'s only challenge to ALJ Thomas's treatment of her student office worker job as PRW is that her earnings were too low for it to qualify. This argument is not persuasive. As the Eighth Circuit held in *Pickner*, "earnings below the guidelines are not inconsistent with substantial gainful activity as a matter of law." *Id.* The *Pickner* court found that the appellant's work as a secretary, bookkeeper, and apartment manager was "gainful" because "it is the kind of work usually done for pay or profit, even though her earnings were minimal." *Id.*; *see also Reeder v. Apfel*, 214 F.3d 984, 989 (8th Cir. 2000) ("[W]ork may be considered gainful even if no profit is realized if it is the type of work usually done for pay or profit.") *Pickner* also noted that the appellant's low earnings were due to the fact that she only worked part-time. Ms. S.'s case is substantially similar. Her work as a student worker was substantial gainful activity, despite not meeting the income thresholds. The fact that she worked a relatively light schedule does not change this conclusion.

Ms. S. attempts to distinguish her work as a student worker, designating it "essentially a work study type position." The Court disagrees. First, the student worker position was done for regular competitive pay, not in exchange for tuition or room and board. (R. 202, 204.) Second, the position involved tasks typically performed by an office clerk or secretary, such as making deliveries, filing, transcription, making copies, and answering phones. (R. 202, 204.) Such tasks are substantial and require significant mental activity. *E.g.*, *Pickner*, 985 2d at 403 (finding secretarial work to be substantial). These facts support ALJ Thomas's conclusion that the student worker position was substantial gainful activity. In sum, the ALJ did not err when he determined that the student worker position would be considered PRW.

Ms. S.'s other arguments regarding PRW tackle the question of whether the ALJ properly found that she was capable of performing her PRW as a sales clerk. However, the Court declines to discuss these questions, because any error resulting from the ALJ's PRW analysis is harmless for two reasons. First, as explored above, Ms. S.'s officer worker job was properly classified as PRW, which is enough to support the ALJ's overall conclusion denying her benefits claim. Second, any error in the ALJ's treatment of the store clerk position is irrelevant due to his alternative finding that there are other jobs available in the national economy that Ms. S. can perform.

### C. Transferability

Ms. S. argues that ALJ Thomas's conclusion that she is capable of work as a receptionist or information clerk was erroneous because he failed to establish the transferability of Ms. S.'s skills. Specifically, Ms. S. claims that because the work the ALJ ultimately found she could perform is semi-skilled work, an assessment of whether her past skills were transferable to the recommended job was required. The Court disagrees.

Transferability of work skills is at issue in cases with specific circumstances: (1) an individual's impairments are severe but do not meet or equal the criteria in the Listing of Impairments; (2) the individual's impairments prevent the performance of past relevant work; and (3) that work has been determined to be skilled or semiskilled. SSR 82-41. Admittedly, Ms. S.'s case could have fallen within these circumstances had the ALJ not properly treated her office job as PRW. However, even had that been the case, for individuals of Ms. S.'s age, educational background, communication abilities, and exertional and non-exertional limitations, transferability of skills is not material to the disability analysis.

Both Ms. S. and the Commissioner focus on the Grids in their arguments. The "Grids" are a set of rules contained within Appendix 2 of 20 C.F.R. Section 404, Subpart P. They "reflect the major functional and vocational patterns which are encountered in cases which cannot be evaluated on medical considerations alone," and provide a quick analysis of the interaction of vocational factors including age, education, and work experience with an individual's residual functional capacity in order to determine disability status. 20 C.F.R. § 404 Subpt. P, App. 2, Rule 200(a).

"Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." *Id.* These rules are arranged in a grid pattern, where different combinations of age, education, and previous work experience (including whether a claimant has transferrable skills) result in a finding of that person being either disabled or not disabled. For example, Rule 201.02 indicates that an individual limited to sedentary work, who is of advanced age with limited or less education and who has no transferable skills is disabled. By contrast, Rule 201.03 directs that an individual with the same age, education, and limitations, but who does have transferable skills, is *not* disabled.

If the Grids were applied to Ms. S., they would direct a finding of not disabled regardless of whether she had transferable skills. *Compare* 20 C.F.R. § 404 Subpt. P, App. 2, Rule 202.21 *with id.*, Rule 202.22. Ms. S. argues that the Grids do not apply because she has exertional and nonexertional limitations, which precludes the Grids from being given conclusive weight. It is true that when a claimant's impairments lead to a combination of exertional and nonexertional limitations, the Grids are not directly applied, but instead provide a "framework to guide [the] decision." 20 C.F.R. § 404.1569a(d); 20 C.F.R. § 404 Subpt. P, App. 2, Rule 200(e); *see also* SSR 83-14. In other words, the Grids become advisory and help guide the analysis regarding an individual's ability to work, but they are not controlling. Instead, "[f]ull consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations…." 20 C.F.R. § 404 Subpt. P, App. 2, Rule 200(e)(2).

This, however, does not end the analysis regarding the Grids in Ms. S.'s case. An exception to the rule about the Grids being less relevant in the case of nonexertional limitations exists. When the nonexertional restrictions do not substantially affect the number of occupations the claimant is capable of performing, the conclusion directed by the Grids may nonetheless be appropriate. *Ellison v. Sullivan*, 921 F.2d 816, 820 (8th Cir. 1990) ("The guidelines do not apply to a claimant whose residual functional capacity is reduced [by nonexertional limitations], unless the reduction is insignificant."); *see also Skeens v. Barnhart*, 57 Fed. Appx. 718, 2003 WL 1193738 at *1 (8th Cir. Mar. 10, 2003) ("[W]here it is clear that added limitation or

8

restriction has very little effect on exertional occupation base, conclusion directed by Grids would not be affected."); *Bandy v. Shalala*, 16 F.3d 1227 (Table), 1994 WL 33151 at *2 (8th Cir. Feb. 7, 1994) (supporting reliance on the Grids in the presence of nonexertional limitations, where despite nonexertional limitations the claimant could perform full range of exertional work); *Robinson v. Sullivan*, 956 F.2d 836, 841–42 (8th Cir. 1992) (same).

*Ellison* is particularly instructive for this case. There, the court found that the guidelines could not apply to the claimant due to nonexertional impairments, but the circumstances directing this conclusion were highly distinguishable from Ms. S.'s case. In *Ellison*, the claimant's nonexertional impairment reduced the number of jobs available to the claimant by half. 921 F.2d at 820. Thus, the court held, the Grids themselves could not "direct a conclusion of disabled or not disabled." *Id.*

A situation more analogous to Ms. S.'s is explored in Program Policy Statement 105, SSR-83-14. The policy statement discusses a nonexertional impairment that would have an insignificant effect on a person's ability to work—an allergy to ragweed pollen. SSR 83-14 ¶ 1. The hypothetical worker in this example can perform sedentary jobs, which are primarily performed indoors. *Id.* Because exposure to ragweed pollen occurs nearly exclusively outdoors, the pool of jobs that the worker is capable of performing is not significantly compromised by the nonexertional limitations. *Id.* This type of obvious conclusion does not require the assistance of a vocational expert, although other closer calls regarding the impact of nonexertional limitations might. *Id.*

In the end, the Court agrees that the Grids not only apply to Ms. S.'s case, but support a finding of her being not disabled. Therefore, the above guidance supports the Commissioner's argument that transferability is immaterial in this case and did not need to be considered. Many of the nonexertional limitations in Ms. S.'s RFC are similar to the ragweed example above—no exposure to extremes of temperature, wetness, humidity, dusts, fumes, gases, or hazards such as unprotected heights and dangerous machinery. (R. 20.) However, the work that Ms. S. is capable of performing with her RFC is not the type that generally occurs in such environmental conditions. Thus, the occupational base is not substantially affected by those limitations. Ms. S.'s nonexertional limitations that limit her standing to two hours a

9

day, and require a sit/stand option after 20 minutes of weightbearing are a closer call; however, the vocational expert specifically testified that many jobs would be available to Ms. S. with these limitations. (R. 59–61.) Because Ms. S.'s nonexertional limitations do not substantially limit the occupational base, the conclusion of not disabled directed by the Grids still applies. *See Ellison*, 921 F.2d at 820.

Applying the Grids to Ms. S., it is clear that transferability becomes immaterial. Ms. S. is a younger individual,[1] who is limited to light work, possesses more than a high school education, and whose previous work experience was semi-skilled. Under both the rule that applies if skills are transferable—Rule 202.21—and the rule that applies if they are not—Rule 202.22—a finding of "not disabled" is directed. Thus, there was no error in the ALJ's decision not to assess the transferability of skills.

### D. Mental Impairments

Ms. S.'s final argument is that ALJ Thomas did not properly consider her mental limitations. Specifically, she argues that he erred when he found her mental impairments to be nonsevere, and that he failed to include adequate mental limitations in the RFC. Applying the required deferential standard of review, the Court finds these arguments do not carry the day. The ALJ's handling of Ms. S.'s mental impairments is supported by the substantial evidence in the record as a whole.

First, the Court notes that although Ms. S. has diagnoses of depression and ADHD, such diagnoses do not automatically establish the existence of severe impairments. *See, e.g., Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011) ("[N]ot every diagnosis…warrants a finding that a claimant is disabled."); *see* 20 C.F.R. § 404.1522(a) (severity of an impairment is related to its impact on ability to do work activities, not whether a diagnosis exists); *cf.* 20 C.F.R. § 404.1525(d) (noting that at step three, diagnosis alone does not mean an impairment meets the requirements of a listing). Furthermore, there is significant evidence to suggest that Ms. S's impairments respond well to treatment. Ms. S.'s treatment records reveal that her ADHD is well-controlled on her current medication, but becomes worse when she forgets to take a dose. (*E.g.*, R. 319 (noting that Ms. S. finds ADHD medication "very beneficial," and that she is

---

[1] A "younger individual" is a person who is between the ages of 18 and 49. 20 C.F.R. § 404 Subpt. P, App. 2 *passim*.

"actually able to finish tasks"), 359 (noting that Ms. S. is seeing "significant benefits" upon starting medication for ADHD), 464 ("She can tell when she does not take it that she has more distraction."); *see also* R. 376, 394, 396–97, 452, 488.)

Similarly, her treatment records show that Ms. S.'s depression is stable and controlled by medication and therapy. (*E.g.*, R. 340 ("She feels that the [depression medication] helps manage her symptoms adequately."), 342 (noting stable depression); *see also* R. 350–51, 376, 378, 392.) Impairments that are sufficiently controlled by treatment are not considered severe. *E.g.*, *Phillips v. Colvin*, 721 F.3d 623, 631 (8th Cir. 2013); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *cf.* 20 C.F.R. § 404.1530(b) (failure to follow prescribed treatment will result in a finding of not disabled).

Ms. S.'s medical records further demonstrate that her remaining depression symptoms are related to situational stress. (R. 376 (mood fluctuates due to period), 384 (noting that depression seemed situational after stressful family gathering), 394–97 (noting depression due to situational stressors such as death, family, and finances.)) However, situational depression does not support a finding of severe impairment. *See Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006) (holding that situational depression did not contradict ALJ's finding that depression was nonsevere); *Dunahoo v. Apfel*, 241 F.3d 1033, 1039–40 (8th Cir. 2001) (finding that depression was nonsevere in part because it was situational).

Additionally, the record demonstrates that Ms. S. is capable of participating in a wide array of daily activities, which supports ALJ Thomas's conclusion that her mental impairments were not severe. Ms. S. regularly shares household chores, such as cleaning, cooking, and grocery shopping, with her partner. (R. 42–43.) In the spring of 2015, she cared for her partner as he recovered from surgery while she also prepared for an upcoming art show. (R. 399.) And Ms. S. can manage her own finances and pursue hobbies such as art, reading, hiking, and playing video games. (R. 213–14, 232–33.) She also maintains social relationships by talking online or eating dinner together. (R. 233.) This evidence supports ALJ Thomas's findings that Ms. S. suffered no more than mild limitations from her mental impairments. *Buckner v. Astrue*, 646 F.3d 549, 555 (8th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) (impairments not severe when only mild limitations exist and there is

no evidence that there is more than minimal limitation in ability to do basic work activities).

Finally, the Court finds that ALJ Thomas was not required to incorporate Ms. S.'s nonsevere mental impairments into her RFC because there was no evidence that they imposed any limitation on her ability to work. *E.g.*, *Hilkemeyer v. Barnhart*, 380 F.3d 441, 447 (8th Cir. 2004); *see also Lane v. Colvin*, 650 Fed. Appx. 908, 911 (8th Cir. 2016); *Gilbertson v. Astrue,* No. 09-cv-1824 (PJS/AJB), 2010 WL 5690391 at *16 (D. Minn. Sept. 20, 2010). Accordingly, the Court determines that Ms. S.'s RFC was properly supported by substantial evidence.

## ORDER

For all the reasons stated above, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's motion for summary judgment **(ECF No. 13)** is **DENIED**;
2. Defendant's motion for summary judgment **(ECF No. 16)** is **GRANTED**; and
3. This matter is dismissed with prejudice.

**Let Judgment be entered accordingly.**


Dated: March 22, 2019                             *s/ Katherine Menendez*
                                                  Katherine Menendez
                                                  United States Magistrate Judge